## Joseph W. Swafford et al. v. Isaac Rosenbloom.

1. NEGLIGENCE—*Not To Be Presumed from the Mere Fact that a Horse Runs Away.*—Negligence will not be presumed from the mere fact that a horse runs away.

2. DAMAGES—*Where $2,500 is Excessive.*—A person was injured in an accident and taken to a hospital. The physician there found no evidence perceptible to the eye, of any injury; no bruises, scratches, nor any broken bones. The evidence tending to show that his condition was not materially different from what it was before the accident, the court is compelled to regard a verdict for $2,500 as unreasonable in amount.

Trespass on the Case, for personal injuries. Error to the Circuit Court of Cook County; the Hon. EDWARD P. VAIL, Judge presiding. Heard in the Branch Appellate Court at the March term, 1901. Reversed and remanded. Opinion filed July 2, 1902.

R. WILSON MORE, attorney for plaintiffs in error.

O'DONNELL & BRADY, attorneys for defendant in error; WILLIAM DILLON, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is a writ of error by which it is sought to reverse a judgment of $2,500 recovered by appellee in the Circuit Court for alleged personal injuries.

The plaintiffs in error, hereinafter referred to as plaintiffs, were conducting a laundry business in Chicago, and were owners of horses and wagons, used and operated by their employes, in collecting and distributing laundry packages. One of these employes was accustomed to drive a bay mare known as "Bess." The afternoon of November 11, 1896, said employe, with the mare, "Bess," harnessed to one of plaintiffs' wagons, was driving east upon the southerly of the two street car tracks on East Madison street, Chicago. When at a point about seventy-five feet east of the intersection of Madison and Market streets, as he states, he met two "big sand wagons" approaching from the east, one proceeding along the northerly of the two car tracks,

and the other in the space between the south car track and the street curb. These wagons, approaching on either side, were, according to the said driver's testimony, "pretty close to the track" along which he was proceeding, and as he rose up to look ahead to see how he could avoid them, the mare shied, turned out quickly and ran on the sidewalk, there seven inches above the surface of the street. She ran almost to the step at the entrance of the building at that point, known as 246 East Madison street, and then turned back into the street, carrying away the sign from the side of the doorway, and was seized and stopped when she had again reached the car track in the street. Neither horse, wagon nor harness were injured, except that one of the shafts was a little splintered.

The driver testifies that he had a tight grasp on the reins, and remained in the wagon until the horse was stopped. In this he is corroborated by one of the witnesses for defendant in error, a policeman who came up just at that moment, who states that the horse was jumping and kicking, and that the driver "was on the seat of the wagon holding the horse for all he was worth."

Defendant in error had been walking westward on Madison street, and had stopped in front of the store at 246 East Madison, to look into the windows and examine the goods there exhibited, intending, he says, to go in and make some purchases. He was about to enter the store when he was struck by the horse or some part of plaintiffs' wagon, or perhaps by the sign, which was carried away by the collision, receiving the alleged injuries complained of.

The declaration charges that the horse was wild, vicious and unsafe for driving on a public highway, of which the plaintiffs in error had notice, and that nevertheless the horse was wrongfully and negligently so driven by an incompetent driver, whereby defendant in error was injured. Attorneys for defendant in error seek to sustain the judgmen on the alleged ground that there is evidence introduced, without objection, tending to show negligence on the part of the driver at the time of the accident, although the

declaration does not so charge. This evidence is the testimony of one of the witnesses for defendant in error who states that he saw the occurrence, and that no one was in the wagon at the time and no one driving the horse. This is the only testimony to that effect. It is entirely uncorroborated and is contradicted by the testimony of the driver, and of the policeman who was called as a witness for the defendant in error. The preponderance of the evidence is clearly against the defendant in error upon this point and the testimony of the witness referred to is apparently inconsistent with the undisputed facts. But if it were to be accepted as true that the driver was not on his seat in the wagon when the horse sprang upon the sidewalk, such fact alone would not necessarily prove negligence on his part. If when the horse shied, the sudden turn or the contact of the wagon with the sidewalk had unavoidably thrown the driver out, his absence from his seat might not have been at all inconsistent with due and proper care. We can not agree with attorneys of the defendant in error that the testimony of the witness referred to makes out even a *prima facie* case of negligence on the part of the driver at the time of the accident. It may be said also that the witness referred to is not accurate in his location of the place of the accident and his testimony is unsatisfactory in other respects. There is no other evidence in the record, so far as we are advised, tending to show negligence on the part of the driver. Whatever presumption of negligence might otherwise arise from the fact that the horse was on the sidewalk where it had no right to be, is rebutted by the testimony tending to show how the accident occurred, which is not credibly contradicted.

It is urged further in support of the judgment that there is evidence tending to show the horse was vicious, and that the plaintiffs in error had notice of such fact. The only support for the claim that the horse was known to be vicious is the testimony of one witness to the effect that about a month before the accident, he had met the same driver on the street running after his wagon, and that the

Swafford v. Rosenbloom.

driver said to him, " that old horse has run away again."
The testimony of this witness is, we think, successfully dis-
credited; but if it were not, it is directly contradicted in
this respect by the driver, and if accepted as true, fails to
prove that the horse was vicious, or that the owners had
any knowledge of the alleged runaway.    The testimony, if
believed, tends to show, perhaps, that the horse may have
been left unfastened, and have started off on his own
account, which, while it might show carelessness on the part
of the driver in so leaving him on that occasion, would not
by any means justify an inference of viciousness on the
part of the animal.    The same witness for defendant in
error, states that the mare once bit at him and tore his over-
coat, when she was standing in front of the laundry.    No
explanations are given, but the witness says he reported it
to a foreman in one of the departments of the laundry.    The
latter denies that anything of the kind was ever reported
to him.    On the other hand the good character of the mare
is testified to by a previous owner, and by those who had
charge of and had driven her, and the testimony to this
effect overwhelmingly preponderates.    The evidence leads
to the conclusion that the mare may have been frightened
by the apparent danger of being crowded in between two
heavy wagons, and suddenly bolted to get out of the way,
going in the only direction open, viz., upon the sidewalk.

It is urged in behalf of plaintiffs in error that the verdict
is excessive.    While defendant in error was doubtless
injured, and was in the hospital four weeks, the testimony
on both sides tends to show that he received no permanent
injury whatever.    His own physician and witness testified
that he would recover.    When he was taken to the hospital
after the accident the physician there found no evidence
perceptible to the eye of any injury, no bruises, no scratches,
nor any broken bones.    Defendant in error complained of
pain in the side, a purely subjective symptom.    When he
left the hospital his pulse, temperature and heart condition
were normal.    The only claim is that he is troubled with
weakness of the nerves, and it appears that he showed symp-

toms of nervousness while being examined by a physician employed by plaintiffs in error and under the excitement thereby caused. There is considerable evidence tending to show that his condition is not materially different from what it appeared to be before the accident. He seems to have suffered a shock from the accident and probably was somewhat bruised. There is some evidence that he had been troubled with a stomach difficulty before the accident. The whole evdence leads inevitably to the conclusion that he was not injured so badly as he perhaps fancies, and we are compelled to regard the verdict and judgment as unreasonable in amount.

Complaint is made of the language used by attorneys for defendant in error in addressing the jury. It is conceded that some of these were improper, and it may be that they had an improper effect on the minds of the jurymen. That there was either a misconception or disregard of the evidence by the jury is manifest. The judgment must be reversed and the cause remanded.